IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RODELL GORDON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 118-223 |
| | ) | (Formerly CR 115-108) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Petitioner, an inmate at the Satellite Camp of the United States Penitentiary in Lompoc, California, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.    **BACKGROUND**

A.    **Indictment and Pretrial Proceedings**

On December 3, 2015, the grand jury in the Southern District of Georgia charged Petitioner and one co-defendant in a five-count indictment. United States v. Gordon, CR 115-108, doc. no. 1 (S.D. Ga. Dec. 3, 2015) (hereinafter "CR 115-108"). Along with naming Petitioner in a forfeiture allegation, the grand jury charged Petitioner with: conspiracy to distribute and possess with intent to distribute marijuana and hashish oil, possession with intent to distribute marijuana and hashish oil (Counts One and Two), and possession of

firearms in furtherance of drug trafficking crimes (Count Three).  Id.  Counts One and Two carried a possible statutory sentence of not more than five years imprisonment.  Id., doc. no. 2.  Count Three carried a possible term of not less than five year and up to life imprisonment *consecutive* to any other sentence.  Id.

Petitioner was arrested in the Eastern District of California, released on bond, and appeared in the Southern District of Georgia for arraignment on January 26, 2016.  Id., doc. nos. 13, 22.  The Court appointed attorney David Stewart to represent Petitioner.  Id., doc. no. 28.  Petitioner remained free on bond pursuant to the conditions of release set by the Eastern District of California.  Id., doc. no. 22.  Mr. Stewart filed a motion to adopt four motions of Petitioner's co-defendant, including the motion for disclosure of exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963), as well as a motion to sever Petitioner's trial from that of his co-defendant.  Id., doc. nos. 16, 29, 30.  Both Petitioner and his co-defendant entered into plea agreements with the government prior to trial.  Id., doc. nos. 43, 77.

### B.    Agreement to Plead Guilty

On April 13, 2016, Petitioner appeared with counsel and pled guilty to Count One, conspiracy to distribute and possess with intent to distribute marijuana and hashish oil.  Id., doc. nos. 42-44.  In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment; and (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id., doc. no. 44, (Plea Agreement), pp. 3-4.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

>      The elements necessary to prove the offense charged in Count One are (1) that two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; (2) that the Defendant, knowing the unlawful purpose of the plan, willfully joined in it; and (3) that the object of the unlawful plan was to distribute and possess with intent to distribute a quantity of marijuana and hashish oil, as charged.

>      Defendant agrees that he is, in fact, guilty of this offense.  He agrees to the accuracy of the following facts, which satisfy each of the offenses' [sic] required elements:

>      On or about October 22, 2014, and prior thereto, the exact beginning date being unknown, to an including January 20, 2015, and thereafter, in Richmond County, within the Southern District of Georgia, and elsewhere, the defendant, RODELL GORDON, aka "Rodie," did knowingly and intentionally combine, conspire, confederate, and agree with other persons, known and unknown, to commit certain offenses against the United States, that is, to distribute and to possess with intent to distribute marijuana and hashish oil, Schedule I controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D); all done in violation of Title 21, United States Code, Section 846.

Id. at 1-2.  With his signature on the Plea Agreement, Petitioner agreed he read and carefully reviewed it with Mr. Stewart, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 10.

By signing the Plea Agreement, Petitioner further agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 7.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  Id.  By signing the Plea Agreement, Petitioner

additionally attested Mr. Stewart had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 8.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and he clearly understood where he was and why he was in court.  Id., doc. no. 78 (Rule 11 Tr.), p. 3. Judge Hall explained there were three charges against Petitioner in the indictment, but he specifically focused on the charge in Count One to which Petitioner was pleading guilty.  Id. at 6.  Judge Hall explained the three elements the government would have to prove in order to convict Petitioner of Count One.  Id. at 17.  Petitioner confirmed he had as much time as needed to review the charges with Mr. Stewart.  Id. at 6.  Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Stewart and that he had read and reviewed the Plea Agreement with counsel before signing it.  Id. at 7, 9.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 7-9.  Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id.  Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement.  Id. at 11. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id. at 12.  Additionally, Judge Hall reviewed the potential for a five-year term of imprisonment for conviction on Count One.   Id. at 13.   When asked, Petitioner confirmed that he understood the possible

imprisonment penalty, as well as the potential $1,000,000 fine and two years of supervised release after completion of the term of imprisonment.  Id.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report (PSI), and Petitioner's sentence would be based on the information in the PSI.  Id. at 14-15.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 15-16.  Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence.  Id. at 16.

Judge Hall next heard a factual basis for the guilty plea from Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, and Firearms.  Id. at 18-23.  SA Rhodes testified that on January 20, 2015, he and an FBI agent met Petitioner's co-defendant outside his apartment at Huntington Apartments in Augusta to interview him about a separate firearms investigation.  Id. at 18-19.  SA Rhodes was present to identify firearms related to the other investigation which ultimately resulted in terrorism-related charges.  Id.  When the agents asked to interview the co-defendant, he requested the interview occur at the apartment complex office rather than in his apartment.  Id. at 19.  The co-defendant was cooperative and agreed to let the agents go back to his apartment to examine three firearms.  Id.  Petitioner was inside the co-defendant's apartment when the agents returned from the apartment complex office.  Id. at 20.

Once inside the apartment, SA Rhodes saw four firearms near a plastic bag with green leafy residue and the smell of marijuana.  Id.  The co-defendant asked to speak with SA Rhodes outside and explained Petitioner brought marijuana to the apartment, the co-

defendant used marijuana, and he would not give consent to search the apartment because he did not know what Petitioner brought into the house.  Id.  SA Rhodes requested assistance from the Richmond County Sheriff's Department to obtain a search warrant.  Id.  Upon execution of the warrant, officers found a total of twelve firearms, 3,597 grams of marijuana, and 398.9 grams of hash oil.  Id. at 20-21.  SA Rhodes was also able to tie Petitioner to another investigation where a federally licensed firearms dealer admitted he received and delivered shipments of marijuana from Petitioner.  Id.  On cross-examination, Mr. Stewart elicited from SA Rhodes the related firearms investigation resulted in a firearms dealer pleading guilty to state charges for which he received a sentence of probation.  Id. at 22.

After SA Rhodes concluded his testimony, Judge Hall asked Petitioner if there was anything he disagreed with in the testimony, to which Petitioner answered, "No, Your Honor."  Id. at 23.  Judge Hall further confirmed Petitioner still wanted to plead guilty, and that he was in fact guilty of the crime charged in Count One.  Id. at 23-24.  Petitioner responded affirmatively.  Id. at 24.

Judge Hall then summarized the proceedings as follows:

> With the entry of the signed plea into the record of this proceeding, the Court finds that the Defendant, Mr. Gordon, is competent.  He fully understands the charge against him.  There is an independent factual basis to support his plea of guilty containing each of the essential elements of this offense.  He knows the statutory punishment that could be imposed on the charge and he knows his jury rights which he has knowingly and voluntarily waived.
>
> I further find that Mr. Gordon's decision to plead guilty this afternoon was voluntary, knowing, and not as a result of any force, pressure, threats, or promises other than the promises made by the government in the Plea Agreement.  Therefore, Mr. Gordon's plea is accepted, and I adjudge him guilty of Count One of the Indictment based upon that plea.

Id. at 24.

6

### C.     Motion to Withdraw Guilty Plea

Less than three weeks later, Petitioner expressed a desire to withdraw his guilty plea, and Mr. Stewart filed a motion to withdraw because Petitioner was alleging ineffective assistance of counsel.  Id., doc. nos. 45, 49.  After conducting an *ex parte* hearing, the Court appointed new counsel, Jason Blanchard, to represent Petitioner.[1]  Id., doc. nos. 53, 62, 83.  Mr. Blanchard filed a motion to withdraw Petitioner's guilty plea, arguing Mr. Stewart provided ineffective assistance by failing to (1) provide Petitioner with all the discovery material prior to entering the guilty plea; and (2) discuss and file a motion to suppress based on an allegedly faulty search warrant.  Id., doc. no. 81.

Judge Hall held a hearing on the motion on October 18, 2016, taking testimony from both Mr. Stewart and Petitioner.  Id., doc. no. 112 ("Mot. Hr'g Tr.").  Mr. Stewart testified he reviewed all the discovery material with Petitioner for over three hours immediately following the arraignment, discussing strengths and weaknesses of the case, sufficiency of the evidence, and how to proceed.  Id. at 9-11.  They reviewed the search warrant, SA Rhodes' report, and Petitioner's recollections of the day the search warrant was executed.  Id. at 12-13.  Mr. Stewart did not believe there was a viable motion to suppress to be filed based on the search warrant, and from that initial meeting, Petitioner expressed his desire to accept responsibility for his marijuana and plead guilty.  Id. at 13-14, 55.

After that initial meeting after arraignment, Mr. Stewart communicated with Petitioner after he returned to California while on pretrial release via telephone, text, email, and letters.  Id. at 17, 52, 67.  They continued to discuss the case discovery as questions

---

[1]Attorney Peter Johnson first replaced Mr. Stewart, but he was allowed to withdraw because of a conflict of interest based on prior representation of a material witness.  CR 115-108, doc. nos. 61, 62.  Mr. Blanchard was appointed to replace Mr. Johnson.  Id., doc. no. 62.

arose, as well as plea-related issues and the sentencing guidelines. Id. at 18. In addition to reviewing the discovery provided by the government, Mr. Stewart went to the Richmond County Sheriff's Office to review the physical evidence and met with SA Rhodes to review the evidence, taking pictures and transmitting them to Petitioner in California. Id. at 53-54. As to documents Petitioner believed to be missing from the government's discovery, for example an ATF report with only one signature instead of two, Mr. Stewart made efforts to locate the documents, but he did not believe the additional documentation Petitioner sought was missing exculpatory evidence, and in any event, by pleading guilty, the requests would be moot. Id. at 28-30.

Petitioner, on the other hand, testified he only reviewed a portion of the discovery with Mr. Stewart at the initial meeting after arraignment, and the two had never discussed any potential defenses, the search warrant, or the possibility of filing a motion to suppress. Id. at 66-68. Petitioner further testified he did not believe Mr. Stewart had investigated his case, and if had seen the entirety of the government's discovery, he would not have pleaded guilty. Id. at 68-69. However, Petitioner also conceded his testimony at the motions hearing conflicted with his Rule 11 sworn testimony that he wanted to plead guilty, was satisfied with his attorney, and had sufficient time to discuss his case with Mr. Stewart. Id. at 76-77. Petitioner also acknowledged he signed the Plea Agreement attesting he read and reviewed it with Mr. Stewart, understood each provision, voluntarily agreed to it, and stipulated to the factual basis for the plea. Id. at 77-79.

At the conclusion of the hearing, and relevant to this § 2255 proceeding, Judge Hall reviewed the testimony of Mr. Stewart and Petitioner concerning Mr. Stewart's representation from arraignment through entry of the guilty plea, recognized the conflict

8

between Mr. Stewart's and Petitioner's testimony, and, recognizing the "extreme specificity" in Mr. Stewart's testimony, credited Mr. Stewart over Petitioner.  Id. at 94-96.  Judge Hall concluded:

> . . . [Petitioner] has failed to prove that Mr. Stewart's representation in this case was deficient.  In fact, this Court notes that it appears to be very thorough representation; that a thorough investigation of the case did occur by Mr. Stewart which is consistent - - supported by his testimony.  It appears that Mr. Stewart was following the wishes of his client throughout the course of negotiations and the investigation of the case.
>
> Mr. Stewart's testimony is that he - - his belief that he achieved a good result for the client and there's nothing in this record that this Court can find that would suggest otherwise. . . .  He has not shown that Mr. Stewart's performance falls below any threshold level of competence.

Id. at 96-97.

Moreover, even though Mr. Blanchard stated there was no suggestion of any deficiency at the Rule 11 proceeding, Judge Hall also reviewed the change of plea proceeding and confirmed the plea was knowingly and voluntarily entered.  Id. at 4, 97-98.  At the conclusion of the hearing, Judge Hall denied the motion to withdraw the guilty plea.  Id. at 99.

## D.   Sentencing

While Petitioner pursued withdrawing his guilty plea, and in accordance with Judge Hall's instructions at the end of the Rule 11 proceeding, the United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty, Criminal History Category at I, and Guidelines imprisonment range at thirty-three to forty-one months.  PSI ¶¶ 32, 35, 64.  As stipulated in the Plea Agreement, (doc. no. 44, p. 4), because Petitioner possessed firearms in connection with the drug conspiracy to which he pleaded guilty and because he was an organizer, leader, manager, or supervisor, the base offense level of sixteen

was twice increased by two points.  PSI ¶¶ 23-26.  Petitioner did not receive a reduction for acceptance of responsibility, as he objected "to any and all assertions of guilt" and, as described above, attempted to withdraw his guilty plea.  PSI ¶¶ 21, 31; PSI Add.  The statutory maximum term of imprisonment for Petitioner's offense was five years.  CR 115-108, doc. no. 2, p. 2; PSI ¶ 63.  Had Petitioner been convicted of the 18 U.S.C. § 924(c) charge in Count Three, dismissed as part of the Plea Agreement, the statutory penalty would have been not less than five years and up to life imprisonment, consecutive to any other sentence.  CR 115-108, doc. no. 2, p. 2; PSI ¶ 65.

The government did not file any objections to the PSI, and two of Petitioner's three objections were either ruled upon as part of the denial of the motion to withdraw guilty plea or resolved prior to sentencing before Judge Hall.  See PSI Add.; CR 115-108, doc. no. 111, (Sent. Tr.), pp. 3-4.  As to the objection regarding Petitioner's ability to pay a fine, Judge Hall placed Petitioner under oath to obtain the financial details Petitioner had failed to provide in financial documents provided to him by Probation, and Judge Hall determined Petitioner had no ability to pay a fine.  Sent. Tr. 4-13.

Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein regarding the Guidelines calculations, and determined the advisory Guidelines range was thirty-three to forty-one months.  Sent. Tr. 13.  Prior to Judge Hall announcing the sentence, Petitioner's mother explained she would not be able to drive to see Petitioner in prison, Mr. Blanchard recounted Petitioner's military service and family responsibilities in requesting a sentence at the low end of the Guidelines range, and Petitioner asked for a report date in California.  Id. at 13-17.  Judge Hall imposed a term of imprisonment of thirty-eight months.  Id. at 20.

### E.    Direct Appeal

A third attorney, Sydney Strickland, represented Petitioner on appeal, where she argued Judge Hall erred in denying the motion to withdraw the guilty plea based on ineffective assistance of counsel. Counsel argued Mr. Stewart provided ineffective assistance when he decided not to pursue a motion to suppress the evidence discovered as the result of a purportedly unconstitutional search.  United States v. Gordon, 722 F. App'x 931, 932 (11th Cir. 2018) (*per curiam*).   The Eleventh Circuit affirmed, concluding the proposed suppression motion was meritless, and therefore, there was no ineffective assistance.  Id. at 934.

### F.    § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, arguing his conviction must be vacated because his counsel "refused to [a]uthenticate the founding document of [Petitioner's] entire case."  (Doc. no. 1-1, p. 3; doc. no. 10, p. 5.)  According to Petitioner, Mr. Stewart provided ineffective assistance by failing to authenticate ATF's first investigation report dated January 22, 2015, which SA Rhodes signed, but a supervisor did not.  (Doc. no. 1-1, pp. 8-9, 11-13, Exs. A-F.)  Petitioner contends his case would have been dismissed had Mr. Stewart pursued this exculpatory information because without a supervisor's signature on the initial investigative report, he could not be legally charged with the crime to which he pleaded guilty.  (Doc. no. 1-1, p. 12.)  Had Petitioner been aware the initial ATF report "was not legal without an authorized signature approval, he never would have plead guilty to an illegal charge."  (Id. at 14.)  Petitioner also contends Mr. Blanchard and Ms. Strickland provided ineffective assistance by

not raising the issue of the supervisor's missing signature in an attempt to challenge Petitioner's guilty plea and resultant conviction.  (Id. at 15-16.)

## II.   DISCUSSION

### A.   No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Doc. no. 10, p. 7.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not

automatically required.  Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015) (*per curiam*).  When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008); see also Campbell v. United States, 743 F. App'x 412, 416-18 (11th Cir. Oct. 2, 2018) (affirming district court's rejection without hearing of ineffective assistance claim in investigating and litigating motion to suppress).  Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B.  Petitioner's Guilty Plea Was In All Respects Knowing And Voluntary

Petitioner contends he received ineffective assistance of counsel because Mr. Stewart did not show Petitioner the entirety of the discovery package prior to entry of the guilty plea, resulting in Petitioner not knowing a supervisor failed to countersign the initial ATF report SA Rhodes prepared concerning the initial encounter with Petitioner and his co-defendant on January 20, 2015.  According to Petitioner, the case against him was brought illegally because of the missing signature, and Mr. Stewart was ineffective for not going over all of the discovery with him and authenticating the ATF report prior to entry of the guilty plea. Prior to addressing the merits of the ineffective assistance claim, and to dispel all doubt about any implicit challenge regarding the knowing and voluntary nature of the guilty plea separate from the performance of Mr. Stewart, the Court specifically concludes for the reasons below that Petitioner was not pressured to plead guilty and knew the nature of the charge, as well as the consequences of his plea.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only

challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).

A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall reviewed three charges were brought against Petitioner in the indictment, specifically informed Petitioner in clear terms of the charge to which he was pleading guilty, and reviewed the elements of the offense the government would have to prove to obtain a conviction. Rule 11 Tr. 6, 17. Petitioner testified he understood this information. Id. Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 7-9. Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement. Id. at 12, 24.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction. In particular, Judge Hall explained Petitioner could be sentenced up to five years in prison for conviction of Count One to which Petitioner was pleading guilty. Id. at 13. Finally, Petitioner also testified he had enough time to discuss the charges with Mr. Stewart, reviewed the Plea Agreement with him prior to signing, and was satisfied with the help he had received from him. Id. at 6, 7, 9; see also Plea Agreement, p. 8 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 10 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding

15

he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.  Indeed, he does not raise any issue with the Rule 11 proceeding itself in these proceedings, a position also stated at the hearing on the motion to withdraw the guilty plea.[2]  Mot. Hr'g Tr. 4. Rather, Petitioner complains Mr. Stewart should have discovered, and alerted Petitioner, the whole case was subject to dismissal because the initial ATF summary report was not countersigned by SA Rhodes's supervisor.  Had Petitioner known of this defect in the ATF documentation, there is a "reasonable probability" Petitioner would not have pleaded guilty. (Doc. no. 1-1, p. 9.)

There is an argument to be made Petitioner's claim concerning alleged problems with the ATF report is barred outright based on Judge Hall's prior determination the guilty plea was knowing and voluntarily entered, and as again explained herein.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973).  However, because Petitioner alleges Mr. Stewart provided constitutionally ineffective assistance leading up to entry of the guilty plea, the Court will also address the merits of Petitioner's claim.  See, e.g., Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam) (stating "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by" plea).

### C.    Mr. Stewart's Performance as Defense Counsel Was Neither Deficient Nor Prejudicial

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500,

---

[2]As explained supra, Judge Hall also reviewed and confirmed on the record the three core principles for accepting the guilty plea were satisfied at the Rule 11 proceedings.  Mot. Hr'g Tr. 97-98.

505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*).  Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

### 1.    The Deficiency Prong of Strickland Is Highly Deferential when the Petitioner Has Pled Guilty

As to the first prong of Strickland, "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel."  Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*), *partially overruled on other grounds*, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997).  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do

with what the best lawyers would have done.  Nor is the test even what most good lawyers

would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the

circumstances, as defense counsel acted . . . ."  <u>Ward v. Hall</u>, 592 F.3d 1144, 1164 (11th Cir.

2010) (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (<i>en banc</i>)).  The Court

must resist "using the distorting effects of hindsight and must evaluate the reasonableness of

counsel's performance from counsel's perspective at the time."  <u>Chandler</u>, 218 F.3d at 1316;

<u>see also</u> <u>Waters</u>, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel

by showing what might have been proves that nothing is clearer than hindsight – except

perhaps the rule that we will not judge trial counsel's performance through hindsight.")

The impact of a guilty plea on the deficiency analysis is substantial both with respect

to the scope and nature of the inquiry.  As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it
> in the criminal process. When a criminal defendant has solemnly admitted in
> open court that he is in fact guilty of the offense with which he is charged, he
> may not thereafter raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty plea.  He may
> only attack the voluntary and intelligent character of the guilty plea by
> showing that the advice he received from counsel was not within the standards
> set forth in <u>McMann</u> [v. Richardson, 397 U.S. 759 (1970)].
>
> . . . [I]t is not sufficient for the criminal defendant seeking to set aside
> such a [guilty] plea to show that his counsel in retrospect may not have
> correctly apprised the constitutional significance of certain historical facts. . . .
>
> . . . Often the interests of the accused are not advanced by challenges
> that would only delay the inevitable date of prosecution, or by contesting all
> guilt.  A prospect of plea bargaining, the expectation or hope of a lesser
> sentence, or the convincing nature of the evidence against the accused might
> well suggest the advisability of a guilty plea without elaborate consideration of
> whether pleas in abatement . . . might be factually supported.

<u>Tollett</u>, 411 U.S. at 267-68.

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (*en banc*) (quoting Wofford v Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984)). When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (*per curiam*). Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508.

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Chandler, 218 F.3d at 1317. Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann, 397 U.S. at 770.

### 2.     Mr. Stewart's Pre-Plea Case Investigation Was Not Constitutionally Deficient

Applying the Strickland standard, it cannot be said Mr. Stewart's performance fell below an objective standard of reasonableness concerning disclosure and authentication of the first ATF report. According to Petitioner, the case against him was brought illegally because of the missing signature, and Mr. Stewart was ineffective for not going over all of the discovery with Petitioner and authenticating the ATF report prior to entry of the guilty

plea. Petitioner further contends Mr. Stewart should have realized and pursued this "exculpatory" evidence, and his failure to recognize and explain this defect in the case to Petitioner prior to entry of the guilty plea establishes deficient performance.

Nondisclosure by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). There are four elements Petitioner must show to establish a Brady violation:

> 1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002) (citing United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989)). Petitioner has not established the first ATF report missing the signature of a supervisor was favorable, let alone that the missing signature renders the entire criminal investigation and subsequent charges against him invalid.

First, after hearing from both Mr. Stewart and Petitioner at the hearing on the motion to withdraw the guilty plea, Judge Hall credited Mr. Stewart's testimony over that of Petitioner which, at that hearing and in this § 2255 proceeding, conflicted with his sworn declarations at the change of plea proceedings. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.");

United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  Thus, Petitioner may not now escape the consequences of his sworn declarations to Judge Hall by belatedly claiming he did not have all the time he needed to review and discuss the case with Mr. Stewart or that he was dissatisfied with Mr. Stewart's responsiveness to his inquiries about discovery.  Indeed, Petitioner originally swore to Judge Hall he was satisfied with the advice and diligent work provided by Mr. Stewart.  Mot. Hr'g Tr. 89-90, 93 (summarizing sworn representations to Judge Hall at Rule 11 hearing); Rule 11 Tr. 6, 7; see also Plea Agreement, p. 8.

Judge Hall credited Mr. Stewart's testimony he reviewed all the discovery with Petitioner and had a thorough conversation about the strengths and weaknesses of the case, the weight of the evidence, and how Petitioner wanted to proceed.  Mot. Hr'g Tr. 94.  They also looked at the case agent's report and what happened on the day of the arrest - the very information in the first ATF report about which Petitioner now complains.  Id.  Petitioner and Mr. Stewart further discussed potential motions and how filing a motion that could be viewed as frivolous might hurt the plea negotiations.  Id. at 95.  They also discussed at the first meeting, lasting over three hours, that Petitioner wanted to accept responsibility and plead guilty.  Id.  Following those directions, Mr. Stewart negotiated a plea agreement resulting in dismissal of the charge that, upon conviction, required a minimum consecutive five-year term.

Second, as evidenced by the first page of the ATF report in question which Petitioner attached as Exhibit F to his § 2255 motion, the report was prepared by SA Rhodes and is a

narrative of the events occurring on the day Petitioner was arrested after a search of his co-

defendant's apartment.  (Doc. no. 1-2, p. 16.)  As succinctly summarized by Respondent:

> Though [Petitioner] baldly asserts the missing signature renders the criminal
> investigation invalid, he is wrong.  The report itself is simply a recitation of
> what SA Rhodes saw and heard during his investigation of [Petitioner and his
> co-defendant].  The report - signed by SA Rhodes - was provided in discovery
> to inform the defendant of the evidence against him and how it was obtained.
> The report itself, however, was not substantive evidence of his criminal
> conduct.  Instead, SA Rhodes's eye witness account, the seized drugs, the
> seized firearms, and [the co-defendant's] statements made up the majority of
> the evidence of [Petitioner's] criminal conduct.

(Doc. no. 9, p. 16.)

As described in detail above, SA Rhodes testified in person at the Rule 11 hearing

concerning the events leading to Petitioner's arrest as part of the recitation of the factual

basis for Petitioner's guilty plea.  Rule 11 Tr. 18-23.  When Judge Hall asked Petitioner if

there was anything he disagreed with in SA Rhodes's testimony, he responded, "No, Your

Honor."  Id. at 23.  Indeed, Petitioner points to no factual inaccuracy or problem with the

initial ATF report other than the missing supervisor signature.  Petitioner offers no authority,

and the Court is not aware of any such authority, for his theory the missing supervisor

signature on the ATF report would require dismissal of the charges resulting from the events

described in the report, particularly when SA Rhodes testified to the events in the report

*prior to* Judge Hall accepting the guilty plea and Petitioner affirmed he agreed with the

testimony.

Petitioner asserts, "Federal Agency Joint Task Investigations require supervisor

signatures from both agencies in order to conduct Joint Investigations."  (Doc. no. 1-1, p.

23.)  Even if the Court were to assume the truth of this statement for argument's sake (for

there is no evidence verifying this proposition, let alone verifying the label applied to the

22

investigation of Petitioner's case), there is nothing to suggest a bureaucratic oversight nullifies the results of an investigation.   Moreover, Petitioner ignores the obvious other sources of available information, including the live testimony of SA Rhodes and the evidence garnered from the statements of his co-defendant, who also entered a guilty plea.  CR 115-108, doc. nos. 75-77.

Moreover, Petitioner's current assertion Mr. Stewart withheld the ATF report in question, (doc. no. 10, p. 4), is belied by his own exhibits, which show he asked about the supervisor's signature prior to entry of his guilty plea on April 13, 2016.  (Doc. no. 1-2, p. 2 (email dated March 27, 2016); p. 5 (email dated April 12, 2016).)  If there were any question about outstanding discovery or Mr. Stewart's efforts to answer Petitioner's questions about the case, Petitioner had every opportunity to tell Judge Hall prior to entering his guilty plea, but instead he repeatedly told Judge Hall he had no issues with Mr. Stewart, SA Rhodes's testimony, or any aspect of pleading guilty.

Petitioner's own exhibits further show Mr. Stewart attempted to address Petitioner's questions by obtaining additional information about the ATF report from the agency and continuing to address Petitioner's concerns even after Petitioner heard SA Rhodes testify and admitted his guilt to Judge Hall.  (Id., Exs. A-E.)  Mr. Stewart continued to seek this information even though, as discussed above, there is no basis for concluding the charges against Petitioner were somehow "illegal" or subject to dismissal because of this missing signature upon which Petitioner fixated.  To date, Petitioner has never argued *factual* innocence, but instead claims *legal* innocence based on an unsupported, and unexplained, theory that a missing signature on an initial report somehow undermines the entirety of the charges brought against him.

23

In sum, Petitioner does not carry the day with his conclusory assertions the missing signature shows an "unauthorized investigation," "Rhode's [sic] was not in lawful jurisdiction," and "this case would have been immediately dismissed for this illegal document, illegal charge, and the blatant misconduct of the prosecution, Rhodes, and Stewart." (Doc. no. 1-1, p 9; doc. no. 10, p. 4.).  Judge Hall credited the testimony of Mr. Stewart that he reviewed all the discovery with Petitioner prior to entry of the guilty plea, and in any event nothing supports a conclusion the unsigned report would have required dismissal of the charges.  Petitioner fails to establish any Brady violation related to the initial ATF report not bearing a supervisor's signature or that Mr. Stewart's performance with respect to that report was in any way deficient.

### 3.   Petitioner Cannot Meet the Prejudice Prong of <u>Strickland</u>

Even if Petitioner had shown deficient performance, which he has not, under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to

determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano, 921 F.2d at 1150-51.

Here, the record shows Mr. Stewart negotiated a favorable plea agreement that dismissed two out of three charges against Petitioner and substantially limited his sentencing exposure by negotiating an agreement dismissing the charge carrying a mandatory, consecutive five-year sentence. Mr. Stewart followed Petitioner's express wishes at the initial meeting after arraignment to negotiate a plea agreement so Petitioner could accept responsibility for his actions. In his sworn testimony to Judge Hall at the Rule 11 proceeding, Petitioner confirmed he had reviewed the case and Plea Agreement with Mr. Stewart, was satisfied with the help Mr. Stewart had provided, knew the rights he was giving up by pleading guilty, and wanted to plead guilty. He never mentioned any problems or disagreement over reviewing the discovery, let alone that he had outstanding questions about an ATF report that might impact his decision to plead guilty. Moreover, as described above, nothing about the missing supervisor signature guaranteed dismissal of the case against Petitioner. Counsel's failure to recognize or preserve a meritless issue cannot prejudice his client. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

Petitioner cannot escape his sworn declarations to Judge Hall in an after-the-fact assertion that there is a "reasonable probability," (doc. no. 1-1, p. 9), he would have insisted on going to trial.  See Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4.  "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal."  Harris v. United States, No. CV 410-069/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), adopted by, 2011 WL 1740306 (S.D. Ga. May 5, 2011).  Petitioner cannot meet either prong of Strickland, and he is not entitled to relief.

### D.     Neither of Petitioner's Post-Plea Counsel Provided Ineffective Assistance of Counsel

Petitioner also claims ineffective assistance from Mr. Blanchard because he did not argue Mr. Stewart's ineffective assistance with respect to the ATF report and "persuaded" Petitioner to focus on the allegation of an invalid search warrant.  (Doc. no. 1-1, pp. 12-14.)  Had Mr. Blanchard presented Petitioner's argument concerning the ATF report, Petitioner believes Judge Hall would have allowed him to withdraw his guilty plea.  Petitioner further argues his appellate counsel, Ms. Strickland, was ineffective for refusing to present his ATF report argument on appeal.  (Id. at 15-16.)

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Prejudice turns on whether "the neglected claim would have a reasonable

probability of success on appeal."  Philmore v. McNeil, 575 F.3d 1251, 1265 (11th Cir. 2009).

As discussed in detail above, there is no merit to the contention Mr. Stewart provided ineffective assistance with respect to the ATF report containing SA Rhodes's signature but not that of a supervisor.  There can be no prejudice from failing to raise a meritless issue. Winfield, 960 F.2d at 974.  Even if there were merit to Petitioner's claim, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review.  Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  As strategic choices are entitled to a "heavy measure of deference," Strickland, 466 U.S. at 691, the fact that Mr. Blanchard and Ms. Strickland choose to rely on an ineffective assistance claim against Mr. Stewart based on allegedly defective warrant, rather than the claim Petitioner says he preferred regarding the ATF report, would not overcome the strong presumption of competence.  See Hagins, 267 F.3d at 1204-05.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 20th day of May, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA